**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

RECEIVED

AUG 3 0 2024

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

LARRY LEE HENDERSON, SR.,                  )
                                           )
                       Plaintiff,          )
                                           )   Case No. 4:2024cv01048
            v.                             )
                                           )
CORNELOUIS BRYANT, et al ,                 )
                                           )
                       Defendant.          )

## FIRST AMENDED COMPLAINT

The Plaintiff alleges as follows:

### Jurisdiction

1.      This action is brought by the Plaintiff to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, ("the Fair Housing Act"), 42 U.S.C. §§ 3601 *et seq.*, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*, and the regulations implementing Title II, 28 C.F.R. Part 35.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 42 U.S.C. § 12133. This Court may grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims alleged herein occurred in the Eastern District of Missouri and because the Plaintiff, some Defendant(s), and the property at issue in this action are located there.

## The Defendant(s)

4.     Defendant Cornelius Bryant ("D1") is a currently employed by HRI Communities (an organized business under the laws of the State of Louisiana). The DI, as employees, and agents is assigned to Cupples Station Loft Apartments, *purportedly* as the Assistant Manager and lives within a unit at Cupples Station Loft Apartments while at the same time (*purportedly*) lives in Chicago, Illinois.

5.     DI, with the understanding that Plaintiff is always and was (during and after the Application process), a disabled person confirmed to a powered wheelchair. D1 was the signer of the property lease, after rewriting four time, and having the plaintiff sign the final copy.

6.     Ann Rito ("D2") is a currently employed by HRI Communities (an organized business under the laws of the State of Louisiana). The D2, as employees, and PBV Director & Regional Manager is assigned to Cupples Station Loft Apartments, purportedly as the Manager of D1, to wit, is aware of the Plaintiff disabled condition and reasonable accommodation needs.

7.     Champika Lindskog (D3), *purportedly* part owner and employed (or former) employed by the Cupples Stations Loft Apartments in St. Louis City Missouri and was told by email from both D1 and D2 about the Plaintiff request for reasonable housing for people with disabilities with his conditions but was directed by D2 to refer to lease notations.

8.     Patrick Gallagher (D4), purportedly a Leasing Associate, but hold himself out as the head of Maintenance for Cupples Station Loft Apartments. D4 is an employee of the Cupples Station Loft Apartments and is under the leadership of D1, to wit, was made aware by Plaintiff of the housing needs and other problems. D4, as the head of maintenance was in charge and given notice during all time the heat, flood and other activities took place within plaintiff unit.

2

## Factual Allegations

9. Larry L. Henderson, Sr (the "Plaintiff") is a resident of St. Louis, MO.

10. Cupples Station Loft Apartments, Inc. ("D5") is purportedly a limited liability company, under Missouri laws and is a 131-unit multi-family apartments programs and services that has units for people with disabilities in St. Louis City. Among its many services, D5 provides low-income person with a chance to apply for tax credit under Missouri Low-Income Housing Tax Credits (LIHTC) and house persons with disabilities.

11. The Plaintiff, who has a multi medical conditions and is disabled person, has lived in D5-operated unit in St. Louis City, Missouri since November of 2023. The Plaintiff currently has three home health aides (or caregivers), Altoe Wallace, Jay Tabor, Garry Anderson and his son Daniel Henderson (who serve as a general backup to caregivers (collectively "caregivers"). Caregivers have been together as a worker since 2023.

12. In November 2023, Plaintiff rented a unit after a home fire in July of 2023 and caregivers Altoe Wallace and Jay Tabor (initially) was set to move in with Plaintiffs' home, but due to delays chose to seek other residential needs. D5 partnered thru its agents D4 and D1 with City of St. Louis, Missouri, as property developer, and D1 set to provide for a suitable home. After less than a year's search, the Plaintiff found 1023 Spruce Street, St. Louis, MO ("the subject property"), a two-bedroom apartment, and he made plans to move-in with the intent to rent for a term of a year with his caregivers having a place to provide services under the state treatment plan work.

13. Before renting the subject apartment, Plaintiff asked D1 for accommodations upon reasonable modifications and the procedural requirements for obtaining an approval letter for the reasonable modification. D1 stated, "he would research the matter and get back with Plaintiff.

14.    D2 researched the Plaintiff needs and told D1 and D3, by email, that Plaintiff did not identify any reasonable modifications needs for accommodations during the signing of lease of the subject property, to wit, D2 wasn't aware of the initial letter given to D1 & D3.

15.    Plaintiff signed the lease and rented the subject property with the agreement that D1 will have the modifications and other renovations (or repairs) completed, inter alia, to date the bathrooms doors, bedrooms, entry doors, and other areas upon the reasonable modifications have not been done, which would make the home accessible for Plaintiff and his disabilities.

16.    In or about March 2024, D1 rented a unit to *Caregiver Tabor* (a caregiver of the Plaintiff) upon Plaintiff request and the caregiver meeting the approval standard. That unit also wasn't ready for *Caregiver Tabor* and caused additional delay in providing care to the plaintiff, D1 begin a process of making unsolicited sexual passes to plaintiff Caregiver Tabor, to wit, was rejected By Caregiver Tabor. D1 one begins the process of delaying the approval and repairs after the rejection.

17.    Plaintiff submitted an email, to D1, requesting updates on renovations, and reasonable modification to the subject property on January 16, 2024, and then on January 17, 2024, purportedly, a major flood took place within the unit causing water damages to 70% of the unit. Rendering the unit unused unit about March 25, 2024, to wit, none of the reasonable modification request was completed, as request by letters, email and other direct communication..

18.    At all times Plaintiff submitted communication upon his request for reasonable accommodations. The first request was oral communication to D1, the second to D3 and the third to D4. The second communication was given to both D1 and D2, to wit, D1 requested that Plaintiff provide D1 with a medical statement for (both) the living caregiver & modification request, which was provided to D1 and D3 in December of 2023.

19.    On December 4, 2023, D3 email to Plaintiff a contract for the work, alleging to be from a guy name Dave for $6,820.00. Dave is the same person who half completed the unit after the flood on January 17, 2024. This contract was after my initial letter dated 11/15/2023 modification request.

20.    On January 10, 2024, a second letter for reasonable modification was sent.

21.    Also on January 10, 2024, notice was given to D1 and D3 informing all payments would be stopped until reasonable modification is completed. In March of 2024 the Plaintiff sent a notice requesting updates on reasonable modification, to wit, D1 replied on May 7, 2024, that he knows of no modification request and that D3 will be handling the ADA request, overlooking that all request was given directly to D1.

22.    According to the meeting on or about May 7, 2024, which D3 called the Plaintiff in the office (and witness by Caregiver Tabor), all modification request is being handle by D1 and that D1 feel you are "Playing games", to wit, the plaintiff loss his temper and later submitted apologies to both D1 and D3 and D4. D4 assured the plaintiff that he will take of the matter but did not want to deal with D1 and D3 matters.

23.    Sometime after the May 7, 2024, D2 begin to email the Plaintiff and alleged D2 didn't understand, overlooking D2 initial communication to D3.

24.    After months of delays and incidents the Plaintiff on July 1, 2024, sent D1, D2, D3, D4 and D5 a notice and intent to sue over the matter given to them until July 30, 2024. See Plaintiff Exhibit "A" Letter of Intent to Sue.

25.     On or about June 4, 2024, D2 begin additional delay tactics with the contractors and Health agency.

26.     From January 2024, to present and upon multiple requests was made. To Defendants.

27.     After multiple requests something seems to happen to the unit, from the major flood to minor pipe water links, other plumbing problems, and the latest was health and air conditions issues. D1 and a unknow guest from day in and day out stomp upon the flood and an attempt to limit and peace within the unit. Making the unit inoperative and is a *Breach the implied warranty of habitability.*

28.     D1 has taken variance petition on the grant or denial of Plaintiff, D3 informed caregivers that they would no longer be able to separate codes to the subject property or their patient unit. Plaintiff extended to resolve the matter with conflict resolution center of St. Louis, Missouri with all and was to no avail. Only to have the acting property manager.

29.     Approximately one month after variance communication to D3, D3 no longer is the property manager and D1 is acting property manager, with D4 as the head of building maintenance.

30.     On August 6, 2024, the Plaintiff submitted a complete to City of St. Louis, Missouri Civil division. On Conflict resolution center of St. Louis, Missouri closed the due failure to communicate by property managers.

31.     On July 2, 2024, the Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610(a), alleging discrimination based on disability. A matter pending investigation.

32.     On or about August 15, 2024, D1 requested that Plaintiff meet with him for re-certification under  Low-Income Housing Tax Credits (LIHTC).

## Claims for Relief
## Count I: The Fair Housing Act

33. The allegations in paragraphs 1-32 are incorporated herein by reference.

34. The subject property located at 1023 Spruce Street, Saint Louis, Missouri, is a "multi-family dwelling" within the meaning of 42 U.S.C. §§ 3601 et seq and the Plaintiff resident of the unit is person who is "handicapped" within the meaning of 42 U.S.C. § 3602(h).

35. Through the actions described above, the Defendants has:

   a. Made housing unavailable on the basis of disability in violation of 42 U.S.C. § 3604(f)(1);

   b. Imposed different terms, conditions, or privileges in housing on the basis of disability in violation of 42 U.S.C. § 3604(f)(2);

   c. Failed or refused to make reasonable accommodations in rules, policies, practices, or services when such accommodations may have been necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B); and

   d. interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise or enjoyment of rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

36. Defendant's actions described above:

   a. constitute a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act or a denial of rights protected by the Fair

7

Housing Act to a person, which denial raises an issue of general public importance in violation of 42 U.S.C. § 3614(a); and

b. constitute discriminatory housing practices under 42 U.S.C § 3614(b)(1).

37. Defendants acted intentionally, willfully, and in disregard for the rights of others.

38. The Plaintiff has been injured by the Defendant's discriminatory actions and practices who are "aggrieved persons" as defined in 42 U.S.C. §§ 3602(i), and have suffered damages as a result of the Defendant's conduct.

### Count II: The Americans with Disabilities Act

39. The allegations in paragraphs 1-32 are incorporated herein by reference.

40. The Plaintiff has notified the Defendants in writing that based on its investigation, it had determined that complaining action was warranted because of violations of the ADA. All conditions precedent to the filing of this Complaint have occurred or been performed.

41. The Plaintiff is a person disabled and requires reasonable modification.

42. The Plaintiff is a residents of D5 and is "qualified individuals with disabilities" within the meaning of the ADA, 42 U.S.C. §§ 12102(1) and 12131(2) and 28 C.F.R.§ 35.104.

43. D5 and D6 are entities within the meaning of the ADA.

44. Defendant's actions described above:

a. excluded individuals with disabilities from participation in and denied them the benefits of the services, programs or activities of a public entity, in violation of Title II of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130; and

b. failed to make reasonable modification in the unit to avoid discrimination in violation of Title II of the ADA.

45. Defendant acted intentionally, willfully, and in disregard for the rights of others.

46.     Plaintiff has been subjected to the Defendants conduct and have suffered and will continue to suffer irreparable harm in the absence of relief.

**WHEREFORE**, the Plaintiff prays that the Court enter an ORDER:

a.     Declaring that the actions of the Defendants described above constitute violations of the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq.*, and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*;

b.     Enjoining the Defendants, its officers, employees, agents, successors, and all other persons in active concert or participation with it, from discriminating on the basis of disability in violation of the Fair Housing Act and the Americans with Disabilities Act;

d. Enjoining the Defendants, its officers, employees, agents, successors, and all other persons in active concert or participation with it, from failing to make reasonable

accommodations in its policies, practices, rules, or services, as required by the Fair Housing Act and the Americans with Disabilities Act, including accommodations that permit the establishment and operation of housing for persons with disabilities.

e.    Ordering the Defendant to take all affirmative steps to ensure compliance with the Fair Housing Act and Americans with Disabilities Act, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of its unlawful housing practices as described herein;

f.    Awarding monetary damages, pursuant to the Fair Housing Act, 42 U.S.C. § 3614(d)(1)(B), and the ADA, 42 U.S.C. § 12131 *et seq.*, to all persons harmed by the Defendant's discriminatory practices; and

g.    Assessing a civil penalty against the D1 and D2 in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

The Plaintiff further prays for such additional relief as the interests of justice may require.

Dated: August 1, 2024

**Respectfully Submitted:**

Larry L. Henderson, Sr.
Pro Se Plaintiff
Post Office Box 24742
St. Louis, MO 63115
Ph: 636-748-0852
**E-mail:** caregiverbishop@gmail.com

11