**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LARRY LEE HENDERSON, SR. | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:24-cv-01048-PLC |
| CORNELIUS BRYANT, | ) Jury Trial Requested |
| ANN RITO, | ) |
| CHAMPIKA LINDSKOG, | ) |
| PATRICK GALLAGHER | ) |
| CUPPLES STATION LLC. | ) |
| HRI MANAGEMENT, LLC | ) |
| Defendants | ) |

**SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff, **Larry Lee Henderson, Sr.** ("Plaintiff"), by and through undersigned counsel, and for his Second Amended Complaint against Defendants, states as follows:

**INTRODUCTION**

**1.** This is an action for disability discrimination, failure to make reasonable accommodations and modifications, retaliation, and breach of a federally approved conciliation agreement in violation of: The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; The Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; and The Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq.

**2.** Plaintiff seeks declaratory and injunctive relief, back pay, compensatory damages, punitive damages, statutory damages, and reasonable attorneys' fees and costs.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 42 U.S.C. §§ 12133 and 12188. Declaratory relief is authorized under 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper under 28 U.S.C. § 1391(b) because the events and omissions giving rise to the claims occurred in the Eastern District of Missouri, and because the property, Plaintiff, and Defendants are located within this District.

## PARTIES

5. Plaintiff is an adult male with disabilities residing in St. Louis, Missouri.

6. Defendant Cupples Station LLC ("Cupples Station") is a Missouri limited liability company with its principal place of business in St. Louis, Missouri, engaged in providing housing and real estate related services under the FHA.

7. Defendant HRI Management, LLC ("HRI") is a limited liability company registered to do business in Missouri, engaged in providing housing and real estate related services under the FHA.

8. Defendant Cornelius Bryant ("Bryant") is a resident of Missouri who, at all relevant times, acted as an agent, assistant manager, and later compliance clerk for the Defendants.

9. Defendant Ann Rito ("Rito") is a resident of Missouri and at all relevant times acted as PBV Director and Regional Manager for Defendants.

10. Defendant Champika Lindskog ("Lindskog") is a resident of Missouri and at all relevant times acted as part-owner and property manager for Defendants.

11. Defendant Patrick Gallagher ("Gallagher") is a resident of Missouri and at all relevant times acted as an employee and/or agent of Defendants.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Disabilities

12. Plaintiff has multiple severe medical conditions, including neurological disorders with hemiplegia and hemiparesis on his left side; Type 1 diabetes with complications; peripheral vascular disease; and vertigo.

13. These conditions substantially limit one or more major life activities, including his mobility, balance, and ability to care for himself. Plaintiff requires caregivers, a powered wheelchair, a hospital bed, and other medical equipment.

14. Plaintiff's impairments constitute "disabilities" within the meaning of the ADA, Rehabilitation Act, and FHA.

15. Defendants were aware, or reasonably should have been aware, of Plaintiff's disabilities and substantial limitations.

16. Plaintiff's medical conditions and related mobility impairments were open and obvious. Plaintiff expressly informed Defendants of his diagnoses, functional limitations, and need for reasonable accommodations, including assistive devices.

17. Despite this knowledge, Defendants failed and refused to provide reasonable accommodation and instead subjected Plaintiff to unlawful discrimination and retaliation because of his disabilities.

### B. Lease and Requests for Modifications

18. After being displaced by a house fire on July 7, 2023, Plaintiff sought housing at 1023 Spruce Street, St. Louis, Missouri (the "Property").

19. On November 9, 2023, Plaintiff and caregiver Alto Wallace visited the Property. Defendant Bryant showed Plaintiff four units, three of which were inaccessible due to steps. Unit 101 was also inaccessible, but Plaintiff requested that the master bedroom door be widened and an accessible shower installed.

20. On November 10, 2023, Plaintiff returned with a deposit and parking payment.

21. On November 14, 2023, Plaintiff was approved. He provided a letter requesting modifications and stated he would not sign a lease until they were included. Defendant Lindskog assured him they could be done.

22. During the application process, the Plaintiff informed the Defendants of his need for wheelchair accessibility and requested reasonable modifications. The defendants assured him the unit would be "ADA ready" before the lease signing.

23. Plaintiff submitted written requests for modifications, including wider doors, an accessible shower, grab bars, automatic door openers, slip-resistant flooring, an accessible sink/toilet, and other adjustments.

24. These requests were reasonable, necessary for equal use and enjoyment, and would not impose undue hardship on Defendants.

25. On November 17, 2023, the Plaintiff entered a written lease for Apartment 101 at the Property, which was then owned and operated by Defendant HRI.

26. The unit was not ready. Defendants promised that maintenance staff would handle the modifications.

27. On December 18–19, 2023, Plaintiff's healthcare agency offered $5,000 for modifications. Defendants initially agreed, but management later demanded medical documentation.

28. On December 20–21, 2023, Plaintiff provided a doctor's letter supporting the modifications.

29. On January 10, 2024, Defendant Bryant pressured Plaintiff to sign additional papers. Plaintiff refused until modifications were complete.

30. On January 11, 2024, Plaintiff was forced to vacate the unit due to safety hazards. He resided in hotels. Defendants again requested duplicative medical necessity emails.

31. On January 16, 2024, the Plaintiff emailed again. Maintenance staff admitted that the Defendants would not make the modifications.

**C. Flooding and Property Damage**

32. On January 17, 2024, Plaintiff's unit flooded due to water leaks from above, causing extensive water damage and destroying durable medical equipment valued at over $84,000.

33. On January 18, 2024, additional flooding occurred.

34. Independent contractors said damage was extensive, but Defendants fired them and attempted to patch the repairs.

35. The unit was rendered uninhabitable for over two months.

36. Multiple subsequent floods occurred, causing further damage.

37. Defendants failed to repair the damage adequately and instead attempted to "patch" the unit, forcing Plaintiff into hotels at his own expense for extended periods.

38. On March 18, 2024, Plaintiff confronted management, including owner Mark Cusumano. Cusumano personally observed the damage and ordered repairs.

39. On March 25, 2024, Defendants completed partial repairs, but modifications were not completed.

**D. Retaliation and Delay Tactics**

40. In April 2024, Defendant Rito mistakenly copied Plaintiff on an email instructing staff to deny his modification requests as not included in the lease.

41. On June 13, 2024, Missouri state inspectors confirmed ADA deficiencies but declined further enforcement.

42. Defendants repeatedly delayed or denied Plaintiff's requests for modifications, demanded redundant medical documentation, and falsely claimed they were not responsible for ADA compliance.

43. Plaintiff's caregivers were also subjected to harassment, including alleged unwanted sexual advances by Defendant Bryant.

44. When the Plaintiff complained, the Defendants escalated their retaliation, including threats of eviction and refusal to make agreed-upon repairs.

**E. HUD Complaint and Conciliation Agreement**

45. On July 2, 2024, Plaintiff filed a HUD complaint alleging disability discrimination.

46. On October 14, 2024, Defendants filed eviction proceedings in the City of St. Louis despite HUD involvement.

47. On December 31, 2024, Plaintiff and Defendants entered into a HUD Conciliation Agreement, approved by HUD on January 7, 2025.

48. Under the agreement, Defendants promised to:

a. Approve Plaintiff's requested modifications of (a) installation of an ADA-compliant automatic lock, unlock system, and door opener at the front door; (b) installation of a discreet, miniature camera to observe the exterior from any location within the apartment prior to granting access through the door; (c) installation of

seven designer grab bars and a fall prevention line in the hallway; (d) replacement of the door and frame with a minimum clear width of 36 inches and a maximum of 48 inches to facilitate wheelchair access in the second bedroom doorway; (e) replacement of the entrance door and bathroom door of the master bedroom with openings having a clear width ranging from a minimum of 32 inches to a maximum of 48 inches; (f) measurement of doorway openings with swinging doors taken between the face of the door and the stop, with the door open at 90 degrees; addition of an automated door lock and opener controlled by remote for the bedroom door; (g) removal of the bathtub and its replacement with a walk-in, open-face shower to enable easier access for bathing and to accommodate caregivers or independent use by Mr. Henderson; (h) installation of seven designer grab bars in the bathroom; (i) replacement of the existing toilet with an accessible model; (j) replacement of the current sink and faucets; (k) installation of non-slip flooring mats; and (l) implementation of limited plumbing adjustments.

b. Not to retaliate against Plaintiff,

c. Attend fair housing training, and

d. Document compliance with HUD.

49. Despite this, Defendants failed to complete the agreed-upon modifications and continued retaliation.

**F. Continued Retaliation and Breach**

50. After the HUD agreement, Defendants ignored deadlines, failed to submit required documentation, and refused to complete modifications.

51. Instead, Defendants continued eviction proceedings against Plaintiff despite assurances under HUD.

## COUNTS

### Count I – Disability Discrimination under the Americans with Disabilities Act

52. Plaintiff incorporates by reference all preceding paragraphs.

53. The ADA prohibits discrimination against individuals with disabilities in housing and related services where Defendants are subject to Title III and related obligations.

54. Plaintiff is a qualified individual with disabilities as defined under 42 U.S.C. § 12102.

55. Plaintiff has multiple serious impairments that substantially limit major life activities.

56. Defendants are covered entities as property owners, managers, and agents.

57. Specifically, Defendants operate public areas, such as the leasing office and community areas.

58. Because of his disability, Defendants discriminated against Plaintiff by refusing to provide accessible housing and equal services, forcing him to live in inaccessible conditions, subjecting him to unsafe flooding conditions, and threatening him with eviction.

59. Because of his disability, Defendants' actions denied Plaintiff equal enjoyment by refusing to provide reasonable accommodation and modifications.

60. Defendant Bryant directly participated by denying Plaintiff's requests, harassing caregivers, and obstructing paperwork.

61. Defendant Rito intentionally instructed staff to deny accommodations (¶42).

62. Defendant Lindskog falsely represented that modifications would be completed, then refused compliance.

63. Defendant Gallagher acted in concert to delay and deny repairs.

64. Defendants Cupples Station LLC and HRI Management LLC are liable as owners and managers responsible for ADA compliance.

65. Plaintiff's disability and protected activities were a motivating factor in Defendants' adverse actions.

66. Defendants' actions were intentional, reckless, and taken with deliberate indifference to Plaintiff's federally protected rights.

67. Defendants' conduct was willful, wanton, and malicious.

68. As a direct and proximate result, Plaintiff suffered damages, including financial loss, destruction of medical equipment, emotional distress, and loss of enjoyment of housing.

WHEREFORE, Plaintiff respectfully requests judgment in his favor on Count I, awarding declaratory relief, injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

**Count II – Failure to Provide Reasonable Accommodation under the ADA**

69. Plaintiff incorporates by reference all preceding paragraphs.

70. Under the ADA, a defendant violates the Act when it fails to make reasonable modifications in policies, practices, or services when such modifications are necessary to avoid discrimination on the basis of disability, unless such modifications would fundamentally alter the nature of the services.

71. Plaintiff is a qualified individual with disabilities as defined under 42 U.S.C. § 12102.

72. Defendants knew or should have known about Plaintiff's disabilities.

73. Plaintiff repeatedly requested modifications such as widened doors, an accessible shower, automatic door openers, and grab bars.

74. These requested accommodations and modifications were necessary for Plaintiff's equal use and enjoyment.

75. These requested accommodations and modifications would not impose undue hardship or fundamental alteration on Defendants.

76. Plaintiff provided supporting medical documentation, including a physician's letter, confirming medical necessity.

77. Defendants intentionally delayed, denied, or ignored those requests.

78. Defendant Bryant demanded duplicative documentation and pressured Plaintiff to sign papers before modifications were complete.

79. Defendant Rito ordered instructions denying Plaintiff's requests via internal communications.

80. Defendant Lindskog misrepresented that modifications would be completed, then refused.

81. Defendant Gallagher acted in concert to refuse repairs and adjustments.

82. Defendants Cupples Station LLC and HRI Management LLC bear direct and vicarious liability as property owners/managers responsible for compliance.

83. Plaintiff's disability and protected activities were a motivating factor in Defendants' adverse actions.

84. Defendants' conduct was willful, wanton, and malicious.

85. Defendants' discriminatory actions caused Plaintiff damages, including but not limited to financial damage, pain, suffering, loss of ability to enjoy property, emotional distress, and monetary damages.

WHEREFORE, Plaintiff respectfully requests judgment in his favor on Count II, awarding injunctive relief requiring modifications, compensatory damages, punitive damages, and attorneys' fees and costs.

**Count III – Failure to Provide Reasonable Accommodation under the FHA**

86. Plaintiff incorporates by reference all preceding paragraphs.

87. The FHA requires housing providers to make reasonable accommodations in rules, policies, and practices when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

88. Plaintiff is a qualified individual with disabilities as defined under the FHA, 42 U.S.C. § 3602(h).

89. The FHA requires housing providers to make reasonable accommodations in rules, policies, and practices when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

90. Defendants knew or should have known about Plaintiff's disabilities.

91. Plaintiff requested modifications, including widened doors, an accessible shower, grab bars, and automatic door openers.

92. These modifications were necessary to afford Plaintiff equal use and enjoyment of the premises.

93. These requested accommodations and modifications would not impose an undue hardship on Defendants.

94. These accommodations were reasonable, necessary, and financially feasible.

95. Defendants intentionally delayed, denied, or ignored those requests.

96. Defendant Bryant demanded duplicative documentation and pressured Plaintiff to sign papers without modifications.

97. Defendant Rito ordered the denial of Plaintiff's requests via internal communications.

98. Defendant Lindskog assured Plaintiff modifications would be made, but failed to authorize them.

99. Defendant Gallagher acted in concert to refuse repairs and adjustments.

100. Defendants Cupples Station LLC and HRI Management LLC are liable as housing providers under the FHA.

101. Plaintiff's disability and protected activities were a motivating factor in Defendants' adverse actions.

102. Defendants' conduct was willful, wanton, and malicious.

103. Defendants' discriminatory actions caused Plaintiff damages, including but not limited to financial damage, pain, suffering, loss of ability to enjoy property, emotional distress, and monetary damages.

WHEREFORE, Plaintiff respectfully requests judgment in his favor on Count III, awarding injunctive relief requiring modifications, compensatory damages, punitive damages, and attorneys' fees and costs.

**Count IV – Retaliation under the ADA**

104. Plaintiff incorporates by reference all preceding paragraphs.

105. Plaintiff engaged in protected activity by requesting accommodations and filing a HUD complaint regarding Defendants HRI, Cupples Station, and Bryant's discriminatory actions.

106. Defendants retaliated against Plaintiff by harassment, withholding repairs, escalating eviction proceedings, harassing Plaintiff's caregivers, causing delay, and refusing to implement agreed-upon modifications.

107. Defendants' conduct violated the ADA.

108. Defendant Bryant personally harassed Plaintiff's caregivers and obstructed paperwork after Plaintiff complained.

109. Defendant Rito instructed staff to deny requests after Plaintiff filed complaints.

110. Defendant Lindskog retaliated by refusing repairs once HUD became involved.

111. Defendant Gallagher carried out retaliatory actions, including delays in repairs.

112. Defendants Cupples Station LLC and HRI Management LLC pursued eviction proceedings while under HUD oversight.

113. Plaintiff's requests for an accommodation and complaint to HUD were a motivating factor in Defendants' adverse actions.

114. Defendants' conduct was willful, wanton, and malicious.

115. Defendants' discriminatory actions caused Plaintiff damages, including but not limited to financial damage, pain, suffering, loss of ability to enjoy property, emotional distress, and monetary damages.

WHEREFORE, Plaintiff respectfully requests judgment in his favor on Count IV, awarding declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs.

**Count V – Retaliation under the FHA**

116. Plaintiff incorporates by reference all preceding paragraphs.

117. Plaintiff engaged in protected activity by requesting accommodation and filing a HUD complaint regarding Defendants HRI, Cupples Station, and Bryant's discriminatory actions.

118. Defendants retaliated against Plaintiff by harassment, withholding repairs, escalating eviction proceedings, harassing Plaintiff's caregivers, causing delay, and refusing to implement agreed-upon modifications.

119. Defendants' conduct violated the FHA.

120. Defendant Bryant personally harassed Plaintiff's caregivers and obstructed paperwork after Plaintiff complained.

121. Defendant Rito instructed staff to deny requests after Plaintiff filed complaints.

122. Defendant Lindskog retaliated by refusing repairs once HUD became involved.

123. Defendant Gallagher carried out retaliatory actions, including delays in repairs.

124. Defendants Cupples Station LLC and HRI Management LLC pursued eviction proceedings while under HUD oversight.

125. Plaintiff's requests for an accommodation and complaint to HUD were a motivating factor in Defendants' adverse actions.

126. Defendants' conduct was willful, wanton, and malicious.

127. Defendants' discriminatory actions caused Plaintiff damages, including but not limited to financial damage, pain, suffering, loss of ability to enjoy property, emotional distress, and monetary damages.

WHEREFORE, Plaintiff respectfully requests judgment in his favor on Count V, awarding declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs.

**Count VI – Retaliation under the Rehabilitation Act**

128. Plaintiff incorporates by reference all preceding paragraphs.

129. Plaintiff engaged in protected activity by requesting accommodation and filing a HUD complaint regarding Defendants HRI, Cupples Station, and Bryant's discriminatory actions.

130. Defendants retaliated against Plaintiff by harassment, withholding repairs, escalating eviction proceedings, harassing Plaintiff's caregivers, causing delay, and refusing to implement agreed-upon modifications.

131. Defendants' conduct violated the Rehabilitation Act.

132. Defendant Bryant personally harassed Plaintiff's caregivers and obstructed paperwork after Plaintiff complained.

133. Defendant Rito instructed staff to deny requests after Plaintiff filed complaints.

134. Defendant Lindskog retaliated by refusing repairs once HUD became involved.

135. Defendant Gallagher carried out retaliatory actions, including delays in repairs.

136. Defendants Cupples Station LLC and HRI Management LLC pursued eviction proceedings while under HUD oversight.

137. Plaintiff's requests for an accommodation and complaint to HUD were a motivating factor in Defendants' adverse actions.

138. Defendants' discriminatory actions caused Plaintiff damages, including but not limited to financial damage, pain, suffering, loss of ability to enjoy property, emotional distress, and monetary damages.

WHEREFORE, Plaintiff respectfully requests judgment in his favor on Count VI, awarding declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs.

**Count VII – Breach of HUD Conciliation Agreement (FHA, 42 U.S.C. § 3610)**

139. Plaintiff incorporates by reference all preceding paragraphs.

140. The Conciliation Agreement, executed December 31, 2024, and approved by HUD January 7, 2025, is binding and enforceable.

141. Under the Agreement, Defendants were required to:

a. Implement Plaintiff's requested modifications.

b. Cease retaliation.

c. Attend fair housing training; and

d. Provide compliance documentation.

142. Defendants failed to comply with each requirement.

143. Defendants Bryant, Rito, and Lindskog directly ignored obligations and continued harassment.

144. Defendant Gallagher failed to participate in required compliance measures.

145. Defendants Cupples Station LLC and HRI Management LLC failed to submit documentation or implement modifications.

146. Defendants' actions caused Plaintiff damages, including but not limited to financial damage, pain, suffering, loss of ability to enjoy property, emotional distress, and monetary damages.

WHEREFORE, Plaintiff respectfully requests judgment in his favor on Count VII, awarding injunctive enforcement of the Agreement, compensatory and punitive damages, and attorneys' fees and costs.

**Count VIII – Breach of Contract (HUD Conciliation Agreement)**

147. Plaintiff incorporates by reference all preceding paragraphs.

148. On December 31, 2024, Plaintiff and Defendants entered into a written Conciliation Agreement approved by the U.S. Department of Housing and Urban Development ("HUD") on January 7, 2025.

149. The Conciliation Agreement is a binding and enforceable contract supported by consideration and federal approval under 42 U.S.C. § 3610.

150. Under the Agreement, Defendants expressly promised to:

a. Implement Plaintiff's requested accessibility modifications.

b. Refrain from retaliation against Plaintiff or his caregivers.

c. Attend fair housing training; and

d. Provide written documentation of compliance to HUD.

151. Plaintiff fully performed his obligations under the Agreement and did not breach its terms.

152. Defendants materially breached the Agreement by failing to implement the agreed modifications, continuing retaliatory actions, failing to attend fair housing training, and refusing to provide compliance documentation to HUD.

153. Defendants' breaches were intentional, willful, and without legal justification.

154. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages, including but not limited to financial loss, destruction of medical equipment, emotional distress, loss of enjoyment of housing, and expenses incurred due to Defendants' nonperformance.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor on Count VIII, awarding:

a. declaratory relief that Defendants are in breach of the HUD Conciliation Agreement.

b. Specific performance or injunctive relief requiring Defendants to comply with the Agreement fully.

c. Compensatory damages in an amount to be proven at trial.

d. Punitive damages for willful and intentional breach.

e. Liquidated damages.

f. Attorneys' fees and costs; and

g. Such other and further relief as the Court deems just and proper.

**Count IX – Negligence / Premises Liability**

155. Plaintiff incorporates by reference all preceding paragraphs.

156. Defendants owed Plaintiff a duty to provide safe and habitable housing.

157. Defendants breached that duty by failing to maintain the Property, allowing repeated floods, and failing to repair the resulting damage.

158. Defendants knew or reasonably should have known about the defective conditions.

159. Defendants knew or reasonably should have known that the flooding would occur in Plaintiff's apartment.

160. As a direct result, Plaintiff lost over $84,000 in medical equipment, suffered financial loss, physical hardship, and emotional distress.

161. Defendants Bryant and Gallagher failed to report properly or remedy flooding.

162. Defendants Rito and Lindskog directed inadequate patch repairs rather than full remediation.

163. Defendants Cupples Station LLC and HRI Management LLC are responsible as landlords and managers for failing to maintain habitable premises.

164. Defendants' negligence rendered the unit uninhabitable, amounting to constructive eviction under Missouri law.

165. Defendants' actions caused Plaintiff damages, including but not limited to financial damage, pain, suffering, loss of ability to enjoy property, emotional distress, and monetary damages.

WHEREFORE, Plaintiff respectfully requests judgment in his favor on Count IX, awarding compensatory damages, punitive damages, and costs.

**FINAL PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

a. A declaration that Defendants violated the ADA, FHA, and Rehabilitation Act.

b. Injunctive relief requiring Defendants to grant reasonable modifications and cease retaliation.

c. Enforcement of the HUD Conciliation Agreement.

d. Compensatory damages for property damage, emotional distress, and economic losses.

e. Punitive damages.

f. Attorneys' fees and costs; and

g. Such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Michelle K. Faron*

Sarah Jane Hunt
Michelle K. Faron
KENNEDY HUNT, P.C.
4500 W. Pine Blvd
St. Louis, MO 63108

Tel: (314) 872-9041
Fax: (314) 872-9043
sarahjane@kennedyhuntlaw.com
michelle@kennedyhuntlaw.com
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served using the Court's CM/ECF system on August 28, 2025 to all attorneys of record:

*/s/ Michelle K. Faron*