**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

LARRY HENDERSON, SR. AND )
JAY TABOR, )
           )
    Plaintiffs, )
           )
v. )        Case No. 4:24-cv-01048-MAL
           )
CORNELIUS BRYANT, et.al. )
           )
    Defendant. )

**PLAINTIFFS 'RESPONSE TO ORDER TO SHOW CAUSE**

Plaintiff Larry Henderson, Sr. by and through attorney David C. Mason, respectfully submits this Response to the Court's Order to Show Cause dated July, 2026 (Doc. 27). For the reasons set forth below, Plaintiff maintains that his allegations of poverty are true, that he is unable to pay the costs of these proceedings, and that this case should not be dismissed under 28 U.S.C. § 1915(e)(2)(A).

**I. INTRODUCTION**

Plaintiff respectfully submits this response to the Court's July 22, 2026 Order to Show Cause. Plaintiff maintains that his allegations of poverty, as stated in his Motions to Proceed *in Forma Pauperis* (Docs. 2, 3), are true and that he is unable to pay the costs of these proceedings. The property referenced in the Court's Show Cause Order, which was identified in a separate Missouri state court proceeding, consists of two categories of assets that are unavailable to Plaintiff for the purpose of paying the filing fee or other costs of this federal action. These assets are: (a) medically necessary electric wheelchairs that are statutorily exempt from execution under Missouri law, and (b) cash held in an irrevocable trust as collateral for a supersedeas bond, which is pledged for the exclusive benefit of a third party and is not in Plaintiffs' possession or control. Because neither of these

1

assets represents funds or property available to Plaintiff, his omission from the *in forma pauperis* applications was not an untrue allegation of poverty.

## II. LEGAL STANDARD

The Court's Order to Show Cause is issued pursuant to 28 U.S.C. § 1915(e)(2)(A), which requires a court to dismiss a case if it determines that "the allegation of poverty is untrue." However, the United States Court of Appeals for the Eighth Circuit has clarified the application of this statute, holding that the central inquiry is not whether an affidavit contains technical inaccuracies, but whether the plaintiff is, in fact, indigent. The Eighth Circuit has held that the statute:  does not mandate that the district court dismiss [the plaintiff's] claim if it finds that certain assertions in his affidavit are untrue; instead, it requires the district court to dismiss the claim if it finds that [the plaintiff] is not sufficiently poor to qualify for in forma pauperis status given the facts that are true.  *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000) (emphasis added). A litigant "is not required to demonstrate absolute destitution" to qualify for *in forma pauperis* (IFP) status. *Id.*  Consistent with this standard, courts have recognized that "not every inaccuracy in an affidavit of poverty . . . should be construed as a false allegation of poverty" that would warrant dismissal. *See Burch v. Goodman*, No. 22-CV-2160, 2022 WL 3051016, at *3 (C.D. Ill. Aug. 2, 2022) (citing* Lee*, 231 F.3d at 459).* Indeed, "immaterial omissions on an IFP application do not require dismissal.*" Id.* Dismissal under § 1915(e)(2)(A) is most appropriate where a plaintiff "conceals or misrepresents his or her financial assets or history in bad faith to obtain *in forma pauperis* status." *Bell v. Iozzo*, No. 22-CV-5928 (NSR), 2023 WL 3956382, at *2 (S.D.N.Y. June 12, 2023) (quoting* Vann v. Comm'r of N.Y. City Dep't of Corr.*, 496 F. App'x 113, 115 (2d Cir. 2012)). As explained below, Plaintiffs did not act in bad faith, and the true facts of their financial circumstances confirm they are sufficiently poor to proceed IFP.

## III. THE $70,000 IN ELECTRIC WHEELCHAIRS ARE EXEMPT MEDICAL EQUIPMENT UNDER MISSOURI LAW

The Plaintiff herein informs the Court that the $70,000 in property referenced by the Court consists of two (2) electric wheelchairs—a J6 Powered Electric Wheelchair and an E3 Electric Wheelchair together with all associated equipment, accessories, and components. These wheelchairs are medically necessary, professionally prescribed health aids for Plaintiff Henderson, who requires them for mobility and to perform the basic activities of daily living. Under Missouri law, these assets are statutorily exempt from collection by creditors. Missouri Revised Statutes § 513.430.1(9) expressly exempts from execution, garnishment, and attachment:  Professionally prescribed health aids for such person or a dependent of such person.   Because these wheelchairs are professionally prescribed health aids, they are exempt property under Missouri law and cannot be seized, sold, or levied upon to satisfy any debt or obligation, which would include the payment of court filing fees.

The IFP application form asks whether an applicant possesses any "automobile, real estate, stock, bond, security, trust, jewelry, artwork, or other financial instrument or thing of value." The purpose of this inquiry and the IFP statute itself is to determine whether an applicant has the "inability to pay" the costs of the proceedings. 28 U.S.C. § 1915(a)(1). Because Plaintiffs' wheelchairs are exempt from execution, they have no liquidation value for the purpose of paying court costs. Plaintiffs' failure to list this exempt property was not a false allegation of poverty; rather, it was an accurate representation that they possess no assets *available* for the payment of court costs. This Court has held that IFP applications must be truthful regarding assets available to pay costs. *See Bell v. Dobbs Int'l Servs.*, 6 F. Supp. 2d 863 (E.D. Mo. 1998). Plaintiffs' omission was not made in bad faith; they reasonably understood the form to solicit information about non-exempt assets that could be used to pay the filing fee.

## IV. THE $28,444 CASH DEPOSIT IS HELD IN AN IRREVOCABLE TRUST AND IS NOT AVAILABLE TO PLAINTIFFS

Plaintiff has informed counsel that the $28,444 referenced by the Court is not cash in Plaintiffs 'possession, savings, or checking accounts. As detailed in the

supersedeas bond documents filed in the Missouri state court case, this amount represents a Certification of Cash Deposit (CCD) held by a third party, N.C.C.U.1 Financial Services, in an irrevocable trust. The trust is administered by another entity, Daniel Matthew Ecclesiastical College, Inc., and is held for the exclusive benefit of the Defendant in this action, 1014 Spruce QOZB LLC, who is the Obligee/Beneficiary of the bond.  These funds are irrevocably designated for the benefit of the opposing party in the state court appeal and cannot be accessed, withdrawn, or used by Plaintiffs for any purpose, including the payment of federal court filing fees. The Trust Fund Agreement governing the deposit explicitly states that the CCD "is irrevocable and may not be amended, modified, or cancelled without the prior written consent of the Obligee/Beneficiary and the Court." Under fundamental principles of trust law, property held in an irrevocable trust for the benefit of a specified third party is not an asset of the settlor available for the settlor's general use. The beneficiary of this trust is 1014 Spruce QOZB LLC, not the Plaintiffs. Courts have recognized that even for purposes of federal benefits, the principal of an irrevocable trust is not a "resource" available to a beneficiary where the beneficiary "lacks legal authority to revoke the trust or direct the use of its assets to his own support." *See Hecht v. Barnhart*, 68 F. App'x 244, 246 (2d Cir. 2003) (citing 20 C.F.R. § 416.1201(a)). Here, Plaintiffs have no authority to access these funds. The existence of this restricted, unavailable deposit does not make Plaintiffs "not sufficiently poor" under the standard articulated in *Lee*, 231 F.3d at 459.

## V. TO THE EXTENT THE TRUST FUNDS ORIGINATE FROM SSI PAYMENTS, THEY ARE FEDERALLY PROTECTED

To the extent any portion of the funds deposited into the irrevocable trust originated from Supplemental Security Income (SSI) or other Social Security benefits received by Plaintiff Henderson, those funds are afforded robust protection under federal law. The Social Security Act provides that:  The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment,

garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.    42 U.S.C. § 407(a) (emphasis added). This anti-alienation provision shields Social Security benefits from creditors and legal process. Missouri law provides a parallel protection, exempting from execution a person's right to receive a Social Security benefit or public assistance benefit. Mo. Rev. Stat. § 513.430.1(10)(a).   Furthermore, federal regulations governing SSI eligibility require a recipient to have less than $2,000 in countable resources ($3,000 for a couple). 20 C.F.R. § 416.1205. Exempt property, such as medically necessary equipment and funds held in certain trusts, are not considered countable resources. Counting these assets against Plaintiffs for IFP purposes would undermine the federal statutory scheme designed to protect the economic security of Social Security beneficiaries.

## VI. THE BOND COLLATERAL IS NOT PLAINTIFFS 'PERSONAL PROPERTY AVAILABLE FOR GENERAL USE

Both the wheelchairs and the cash deposit are collateral pledged to secure a supersedeas bond in the separate state court appeal. They are not Plaintiffs ' personal property available for discretionary use. The Collateral Assignment Agreement irrevocably pledges and transfers the wheelchairs as security for the bond, and Plaintiffs are prohibited from selling, transferring, or otherwise encumbering them. Likewise, the Trust Fund Agreement confirms the cash deposit is held in a segregated account exclusively for the benefit of the state court plaintiff. These assets serve a specific, court-related legal purpose in another case and are not available to pay this Court's filing fees.

## VII. THE USE OF EXEMPT ASSETS AS BOND COLLATERAL FOR THE EVICTION TRIAL DE NOVO IS PERMISSIBLE UNDER MISSOURI LAW AND DOES NOT WAIVE THE EXEMPTION

Under Missouri law, a defendant in an unlawful detainer action must post a bond to stay execution of an eviction judgment pending a trial de novo. The statute requires a defendant to "give bond, with security sufficient to secure the payment of all damages, costs and rent then due." Mo. Rev. Stat. § 535.110; *see*

*Byrne v. Moore*, 332 S.W.3d 864, 866 (Mo. App. 2011). The statute requires "security sufficient," not necessarily cash on hand, and Missouri courts have "substantial discretion in marshaling security, so long as security is the ultimate goal." *State ex rel. Brickner v. Saitz*, 664 S.W.2d 209, 214 (Mo. 1984) (discussing Missouri Rule 81.09). Consistent with this discretion, Missouri courts have accepted exempt property as collateral for a supersedeas bond. For example, in *In re Norman*, a debtor posted stock that he claimed as exempt as security for a supersedeas bond, which was accepted by the Missouri court. 13 B.R. 894, 896 (Bankr. W.D. Mo. 1981). The voluntary act of pledging exempt property as security for a specific obligation, such as a bond, does not constitute a general waiver of the exemption. As one court explained, "if the property was exempt the giving of such security would not be a waiver of the exemption. It is not the policy of the law to deprive the head of a family of the means of gaining a livelihood, and reduce him from a useful citizen to a pauper." *Desmond v. State ex rel. Pofall*, 15 Neb. 438 (1884). Rather, the pledge creates a "special waiver" that operates only in favor of the specific obligee on the bond—in this case, 1014 Spruce QOZB LLC—and does not extinguish the exemption as to other creditors or for other purposes. Such a waiver "operates only in his favor, and only as to the particular debts as to which the waiver is made. Such a waiver does not convey an estate; it merely denies the right to claim the exemption" against that specific party. Okla. Att'y Gen. Op. No. 68-109 (1968). Once pledged, the property is not subject to execution by other creditors because "[t]he pledgee has a qualified property in the thing pledged, and is entitled to the possession." *Waggoner v. Briggs*, 166 S.W. 50, 50 (Tex. App. 1914).

Therefore, the fact that Plaintiff used exempt medical equipment and restricted trust funds to secure the supersedeas bond for their eviction trial de novo does not convert those assets into available resources for the purpose of paying federal court filing fees. The pledge was a special, limited waiver in favor of the state-court obligee only. The exemption and restricted nature of the assets remain intact against all other claims, including for the purpose of the federal court's poverty determination under 28 U.S.C. § 1915(e)(2).

## VIII.   PLAINTIFFS 'ACTUAL FINANCIAL CIRCUMSTANCES DEMONSTRATE POVERTY

Analyzing Plaintiffs 'financial situation based on the "facts that are true" demonstrates their indigence. Plaintiff Henderson's IFP application (Doc. 2) shows the following: * **Cash on hand:** $69.23 * **Monthly Income:** $962.00 (plus a parsonage allowance used exclusively for housing) * **Monthly Expenses:** $1,855.65 (including $352 for rent, $615.25 for medical co-pays, and $399 for food) * **Monthly Deficit:** Approximately $893.65 * **Debts:** Over $37,000 in rental arrears, judgments, and other debts.   Combined, Plaintiff had only $273.23 in accessible cash and no non-exempt assets available to pay court costs. His monthly expenses far exceed his income. Given these facts, Plaintiffs are "sufficiently poor" to qualify for *in forma pauperis* status under the Eighth Circuit's standard in *Lee*, 231 F.3d at 459.

## IX. POTENTIAL ERROR IN THE SHOW CAUSE ORDER

Plaintiff respectfully submits that the Court's Order to Show Cause does not account for the nature of the assets at issue, leading to an inquiry under 28 U.S.C. § 1915(e)(2). Specifically: 1. The Order appears to assume the existence of any asset with the ability to pay court costs, without considering whether those assets are legally unavailable because they are exempt from execution or held in an irrevocable trust for a third party. 2. The Order does not appear to account for Missouri's statutory exemption for professionally prescribed health aids under Mo. Rev. Stat. § 513.430.1(9). 3. The Order does not appear to account for the irrevocable trust structure that makes the $28,444 cash deposit inaccessible to Plaintiff. 4. The Order does not appear to account for the federal protection of Social Security/SSI benefits under 42 U.S.C. § 407(a). 5. Under the controlling Eighth Circuit precedent in *Lee*, the relevant inquiry is whether Plaintiffs are "sufficiently poor . . . given the facts that are true." 231 F.3d at 459. The true facts are that Plaintiffs have only $273.23 in available funds and a significant monthly deficit, which confirm their poverty.

## X. NO BAD FAITH

Plaintiff did not act in bad faith. He did not "conceal or misrepresent financial assets or history in bad faith to obtain *in forma pauperis* status." *Bell v. Iozzo*, 2023 WL 3956382, at *2. Plaintiff reasonably interpreted the IFP form's request for "things of value" to mean assets that are available for execution and can be used to pay debts or fees not exempt medical necessities or restricted trust funds held for another's benefit.

Even if the Court concludes that Plaintiff should have disclosed these unavailable assets and explained their exempt status on the IFP form, his omission does not warrant the severe sanction of dismissal. As courts have held, "not every inaccuracy in an affidavit of poverty . . . should be construed as a false allegation of poverty." *Burch*, 2022 WL 3051016, at *3. Where bad faith is not apparent, lesser sanctions, such as allowing a plaintiff to supplement an application or revoking IFP status and providing an opportunity to pay the fee, are more appropriate than dismissal.* See Camp v. Oliver, 798 F.2d 434, 439 (11th Cir. 1986).

## XI. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Find that Plaintiffs 'allegations of poverty are true and that Plaintiffs remain sufficiently poor to qualify for *in forma pauperis* status under *Lee v. McDonald's Corp.*, 231 F.3d 456 (8th Cir. 2000);

2. Decline to dismiss this case under 28 U.S.C. § 1915(e)(2)(A) because the assets referenced in the Show Cause Order are either (a) exempt from execution as professionally prescribed health aids under Mo. Rev. Stat. § 513.430.1(9), or (b) held in an irrevocable trust for the benefit of a third party and are not available to Plaintiff;

3. In the alternative, if the Court finds that Plaintiff should have listed the exempt medical equipment or irrevocable trust funds on their IFP

applications, allow Plaintiff to supplement his applications with this information rather than dismissing the case, as Plaintiff did not act in bad faith and remains unable to pay the costs of these proceedings;

4.    Grant Plaintiff leave to proceed *in forma pauperis*; and

5.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

By:  /s/ David C. Mason
DAVID C. MASON  #33536
4537 Westminster Pl
St. Louis, Mo 63108
Attorney for Defendant
Ph: (557) 214-9668
judge.dcmason@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July 2026, a true and correct copy of the foregoing Response to Order to Show Cause was filed via CM/ECF, which will serve all parties of record.

/s/ David. C. Mason